**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 220443-U

Order filed July 13, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| LAYKO PROPERTIES, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | DuPage County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| M-OK DISTRIBUTION, INC., M-OK | ) | |
| FREIGHT LINES CORP., TERRENCE | ) | |
| O'KEEFE and PHILLIP MICELI, | ) | Appeal No. 3-22-0443 |
| | ) | Circuit Nos. 14-L-80, |
| Defendants-Appellees, | ) | 18-MR-750 (cons.) |
| | ) | |
| and | ) | |
| | ) | |
| TIMOTHY H. OKAL, ANDREW H. | ) | |
| DUNCAN, ROBYN MARSH, SCHOLLE | ) | |
| IPN CORPORATION, SCHOLLE IPN | ) | |
| PACKAGING, INC., and JOSEPH | ) | Honorable |
| GIRALAMO, | ) | Robert Rohm, |
| | ) | Judge, Presiding. |
| Respondents-Appellees. | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Hettel and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) The trial court did not abuse its discretion by denying the plaintiff's motions for sanctions against the defendants' accountant and attorneys; (2) the trial court did not abuse its discretion by denying the plaintiff's request to depose a witness; (3) the trial court did not err by refusing to consider the plaintiff's motions for sanctions against a corporate defendant; (4) the trial court did not err by granting summary judgment in favor of the defendants on the plaintiff's claims under the Uniform Fraudulent Transfer Act and holding that attorney fees are not available under that Act; (5) the parties' lease agreement did not authorize an award of costs and attorney fees incurred in a postjudgment action to enforce a judgment.

¶ 2    Plaintiff-Appellant, Layko Properties (Layko), sued Defendant-Appellee, M-OK Distribution, Inc. (M-OK Distribution), and its principals, Phillip Miceli and Terrence O'Keefe, for breach of the parties' lease agreement and was granted a default judgment. After approximately eight years of litigation, the judgment was paid by M-OK Freight Lines Corp. (M-OK Freight), a successor-in-interest to M-OK Distribution. The trial court sanctioned M-OK Distribution, M-OK Freight, Miceli and O'Keefe for falsely claiming throughout the litigation that M-OK Distribution owned no trucks, which were assets that could have been used to satisfy the judgment against M-OK Distribution. Layko appealed the trial court's sanctions order, arguing that the trial court abused its discretion by declining to impose additional sanctions. We affirmed the trial court's order in *Layko Properties v. M-OK Distribution, Inc.*, *et al.*, 2026 IL App (3d) 220269-U (Appeal No. 3-22-0269).

¶ 3    Layko subsequently sought sanctions against Timothy Okal, an attorney who represented M-OK Freight, Andrew Duncan, an attorney who represented M-OK Distribution, Joseph Giralamo, M-OK Distribution's accountant, Scholle IPN Packaging, Inc. (Scholle), a customer of M-OK Distribution and M-OK Freight, and Robyn Marsh, an attorney who represented Scholle. Layko claimed that the attorneys and Giralamo had deliberately stymied Layko's effort to collect on the judgment through various acts of misconduct. Layko also filed a claim against M-OK-Distribution, M-OK Freight and Scholle under the Uniform Fraudulent Transfer Act (Act) (740

2

ILCS 160/1 *et seq.* (West 2018)), and a claim under the parties' lease for costs and attorney fees Layko had incurred in postjudgment proceedings to enforce the judgment against M-OK Distribution.

¶ 4 The trial court (1) denied Layko's motions for sanctions against Okal, Duncan, Giralamo and Marsh, (2) held that it lacked jurisdiction to award sanctions against Scholle, (3) denied Layko's request to depose a witness after the case was dismissed, (4) granted summary judgment in favor of the defendants on Layko's claim under the Act, and (5) denied the plaintiff's claim for costs and attorney fees under the parties' lease. Layko appeals each of these rulings.

¶ 5                                    I.  BACKGROUND

¶ 6 Layko leased commercial space to M-OK Distribution. M-OK Distribution vacated the premises and failed to pay rent due under the lease. On January 27, 2014, Layko filed suit against M-OK Distribution, Miceli and O'Keefe to recover damages (the 2014 action). On April 29, 2014, Layko obtained a default judgment and was awarded $144,913.60. M-OK Distribution did not pay the judgment.

¶ 7 On July 23, 2014, Layko attempted to collect on the judgment by serving a non-wage garnishment summons and interrogatories on Scholle. Scholle answered the garnishment and interrogatories by stating that it received transportation services and warehouse services under "an agreement with [M-OK Distribution] which has been extended effective April 1, 2015, with M-OK Freight Lines Corp." Scholle did not list the amounts due under the agreement. It did not acknowledge the existence of any assets available to satisfy the judgment against M-OK Distribution or turn over any amounts to Layko.

¶ 8 On May 24, 2018, Layko filed a three-count complaint against M-OK Freight, Miceli and O'Keefe alleging (1) alter ego, (2) successor liability, and (3) fraudulent transfer under the Act

(the 2018 action). In the complaint, Layko alleged that Miceli and O'Keefe incorporated M-OK Freight on or about March 22, 2013, and immediately thereafter transferred all the assets of M-OK Distribution to M-OK Freight without consideration. Layko further alleged that M-OK Freight had collected accounts receivable due to M-OK Distribution for services performed by M-OK Distribution before M-OK Freight was incorporated. Layko claimed that all these actions were performed in a fraudulent attempt to evade M-OK Distribution's liability for its debts, including the April 29, 2014, judgment. The complaint further alleged that M-OK Distribution and M-OK Freight were mere "facade[s]" that were the alter egos of Miceli and O'Keefe." Layko sought to pierce the corporate veil of M-OK Distribution and impose personal liability for the April 29, 2014, judgment on Miceli and O'Keefe.

¶ 9        On August 26, 2020, Layko filed a revised motion for turnover of assets against M-OK Freight in the 2014 action pursuant to sections 1402(c)(1) and (5) of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1402(c)(1), (c)(5) (West 2020). Layko argued that M-OK Freight was liable for all M-OK Distribution's debts, including the April 29, 2014, judgment against M-OK Distribution, because M-OK Freight was a successor of M-OK Distribution. Layko sought a money judgment against M-OK Freight in the amount of the April 29, 2014, judgment plus interest, attorney fees, and costs. In response to Layko's motion, M-OK Freight maintained that it was not a successor to M-OK Distribution because it was a shipping company, whereas M-OK Distribution was a transportation broker.

¶ 10        On January 19, 2021, in the 2014 action, M-OK Distribution, Miceli and O'Keefe agreed to stipulate that M-OK Freight was a successor to M-OK Distribution and was therefore liable for the April 29, 2014, judgment. The trial court issued an order to that effect. The parties agreed that Layko would file an application for attorney fees and costs.

4

¶ 11   On January 25, 2021, Layko filed a petition claiming that M-OK Freight, Miceli and O'Keefe had caused Layko to incur more than $241,000 in attorney fees and more than $132,000 in additional litigation costs by falsely denying successor liability prior to January 21, 2021. Layko sought to recoup these fees and costs under the parties' lease agreement and as a sanction pursuant to Supreme Court Rule 137.

¶ 12   On March 22, 2021, Layko filed a motion for turnover of assets against Scholle. In its motion, Layko argued that Scholle's answer to the July 2014 garnishment was inconsistent with Scholle's own internal communications and with the testimony of Scholle's corporate representative, each of which showed that Scholle believed that M-OK Freight was merely a new name for M-OK Distribution, not a separate entity. Layko further contended that Scholle had paid more than $1.3 million to M-OK Freight after the garnishment was served, including $123,980 that Scholle owed to M-OK Distribution prior to the garnishment. Layko asked the court to order Scholle to turn over to Layko the value of all amounts it paid to M-OK Freight after the garnishment to the full extent of the April 29, 2014, judgment plus interest, costs and attorney's fees.

¶ 13   On May 25, 2021, the trial court ruled that the lease agreement between M-OK Distribution and Layko authorized Layko to recover the attorney fees and costs it incurred during the postjudgment proceedings in its effort to collect on the April 29, 2014, judgment in both the 2014 action and the 2018 action. However, the court noted that its ruling on this issue was not a final and appealable order.

¶ 14   On April 2, 2021, Layko moved for summary judgment in the 2018 action. The trial court entered summary judgment for Layko as to its claims for alter ego and successor liability.

However, the court denied Layko's motion as to the fraudulent transfer claim because it believed there were factual issues that precluded summary judgment on that claim.

¶ 15    On September 2, 2021, the trial court stayed all proceedings on Layko's turnover motion against Scholle and all sanctions proceedings pending a pretrial settlement conference. On December 28, 2021, the court lifted the stay in part so that Layko could file a motion for sanctions against M-OK Freight, Miceli and O'Keefe. The stay remained in effect as to other matters, including Layko's motion for turnover of assets against Scholle and proceedings for sanctions against other defendants.

¶ 16    On January 18, 2022, Layko filed its motion for sanctions against M-OK Freight, Miceli, and O'Keefe pursuant to Illinois Supreme Court Rules 137 and 219. In its motion, Layko argued that it was entitled to recover all of the fees and costs it incurred as a result of the defendants' lies about M-OK Distribution's ownership of trucks and other assets and their refusal to acknowledge that M-OK Freight was merely a name change for M-OK Distribution (among other misconduct). The defendants filed a response, and the matter was set for an evidentiary hearing on February 18, 2022.

¶ 17    On February 10, 2022, Layko's counsel e-mailed defendants' counsel title documents it had obtained from the Illinois Secretary of State with respect to three trucks at issue in the case. On February 14, 2022, the defendants filed a motion pursuant to Rule 3.3 of the Illinois Rules of Professional Conduct withdrawing M-OK's prior denial of ownership of those trucks. Ill. R. Pro. Conduct (2010) R. 3.3 (eff. Jan. 1, 2010). Four days later, the defendants tendered payment of the entire judgment and all statutory interest that had accrued through February 18, 2022.

¶ 18    On February 18, 2022, the trial court entered a "Full Satisfaction of Release of Judgment" in the 2014 action. The court's order stated that the prior judgment entered by the court was

"vacated and held for naught" based on the payment tendered by M-OK Distribution and ordered that the matter was "hereby dismissed." Layko filed a motion for reconsideration of the court's dismissal order, which the trial court denied on April 18, 2022.

¶ 19 On May 17, 2022, Layko appealed the trial court's determination that the April 29, 2014, judgment had been fully satisfied, arguing that Layko was still entitled to obtain postjudgment contractual interest, attorney fees, costs and expenses under the parties' lease. In its notice of appeal, Layko stated that its postjudgment motion to reconsider was the "final postjudgment motion" in the 2014 action, and that "no other claims or issues remain outstanding in that proceeding."

¶ 20 After conducting multiple hearings on Layko's fee petitions and motion for sanctions, the trial court held that some, but not all, of the misconduct alleged by Layko was sanctionable under Supreme Court Rules 137 and 219. Specifically, the court ruled that M-OK Distribution's, Miceli's and O'Keefe's false statements in pleadings, testimony and discovery that M-OK Distribution did not own trucks or transportation equipment were sanctionable. However, the court found that the other acts of misconduct alleged by Layko (including M-OK Distribution's, Miceli's and O'Keefe's denials of successor liability) were not sanctionable, and that Layko would have incurred the same litigation costs regardless of such alleged misconduct. The trial court ultimately held that Layko had incurred $53,217.62 in costs and attorney fees as a result of the defendants' lies about truck ownership, and awarded Layko that amount.

¶ 21 The defendants filed several motions challenging the trial court's prior ruling that section 1601 of the parties' lease authorized Layko to recover attorney fees. On April 18, 2022, the trial court reversed its prior ruling and ruled that section 1601 did not permit the recovery of attorney fees that Layko incurred in the postjudgment collection proceedings.

7

¶ 22        On July 5, 2022, Layko filed a motion in the 2018 case asking the trial court to lift the stay of proceedings and to authorize Layko to seek sanctions against Okal, Duncan, Marsh and Giralamo (collectively, the professionals) and Scholle.

¶ 23        On July 7, 2022, Layko filed a motion in the 2018 case asking the trial court to reconsider its denial of Layko's motion for summary judgment on Layko's fraudulent transfer claim. The defendants countered with a summary judgment motion of their own, arguing that Layko's fraudulent transfer claim was mooted by the court's dismissal of the 2014 case on February 18, 2022. The trial court granted the defendants' summary judgment motion and denied Layko's motion.

¶ 24        On September 15, 2022, the trial court lifted the stay and authorized Layko to seek sanctions against the professionals and Scholle. Layko filed its motion for sanctions on October 4, 2022.  Layko sought $338,117 in sanctions against Okal, $41,280 against Duncan, $23,567 against Marsh, and approximately $200,000 against Giralamo. Layko did not specify the amount due from Scholle, but it asserted that all fees incurred by Layko were proximately caused by Scholle's false response to the garnishment in 2014.

¶ 25        In its motion for sanctions against Okal, Layko claimed that Okal had repeatedly lied in pleadings and in open court by stating that M-OK Distribution did not own any trucks. Layko alleged that Okal continued to make this false assertion for years after Layko had presented him with documentary proof showing that M-OK Distribution did, in fact, own trucks.

¶ 26        In its motion for sanctions against Duncan, Layko alleged that Duncan had committed various discovery abuses, including serving vexatious discovery requests and refusing to produce a named defendant for a deposition. Layko claimed that Duncan's discovery violations delayed the proceedings and caused Layko to incur additional attorney fees.

8

¶ 27    In its motion for sanctions against Marsh, Layko alleged that Marsh had obstructed Layko's legitimate discovery requests in several respects, including refusing to produce an appropriate representative of Scholle for deposition.

¶ 28    In its motion for sanctions against Giralamo, Layko alleged that Giralamo had obstructed discovery in several respects, including refusing to produce subpoenaed documents.

¶ 29    In its motion for sanctions against Scholle, Layko alleged that Scholle (1) provided a false response to the non-wage garnishment, (2) improperly paid over $1.4 million to M-OK Distribution after the garnishment was served on Scholle, (3) characterized M-OK Freight as a separate entity from M-OK Distribution so that M-OK Distribution could avoid paying the 2014 judgment, even though Scholle knew that M-OK Freight was merely a name change for M-OK Distribution, and (4) committed discovery abuses in both the 2014 and 2018 proceedings to frustrate Layko's ability to collect on the 2014 judgment.

¶ 30    The trial court afforded Layko one afternoon on October 19, 2022, to put on evidence against Scholle, Marsh, Okal, Duncan, and Giralamo. Layko waived an evidentiary hearing against Okal and Duncan. When Layko asked to depose Jerry Trousdale (Scholle's chief financial officer who signed the 2014 garnishment response on Scholle's behalf), the trial court stated, "Denied. This case is over. This case will be over once and for all on October 19th assuming I get an appropriate motion on file so that I can hear it."

¶ 31    The trial court denied all of Layko's motions for sanctions against the professionals. The trial court found that it had no jurisdiction to sanction Scholle under Supreme Court Rules 137 and 219(c) because Scholle was a nonparty and because the 2014 enforcement case was over.

¶ 32    This appeal followed.

¶ 33                                    II. ANALYSIS

9

¶ 34    As a preliminary matter, we note that Layko has flagrantly violated the requirements of Illinois Supreme Court Rule 341 in preparing its brief. Rule 341(h)(6) provides, in pertinent part, that an appellant's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Layko's statement of facts is rife with argument and commentary.

¶ 35    Our supreme court's rules governing the format and content of appellate briefs are mandatory rules of procedure, not mere suggestions. *Menard v. Illinois Workers' Compensation Comm'n*, 405 Ill. App. 3d 235, 238 (2010); *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8. When a party's brief fails to comply with Rule 341(h)(6), we may dismiss the appeal, strike the statement of facts, or disregard the noncompliant portions of the party's statement of facts. *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077, ¶ 2, n. 1; *Szczesniak*, 2014 IL App (2d) 130636, ¶ 8.

¶ 36    This is not the first time that Layko has violated Rule 341 in this manner. The statement of facts in Layko's brief in Layko I was equally argumentative. As we did in that case, we will address the issues presented in this case on their merits, but we will disregard the argumentative statements in Layko's brief. We again admonish Layko's counsel to comply fully with all applicable supreme court rules in future cases.

¶ 37    Turning to the merits, Layko argues that the trial court abused its discretion by 1) declining to award sanctions under Illinois Supreme Court Rules 137 and 219(a) against the professionals for various acts of alleged misconduct, and 2) denying Layko's request to depose Jerry Trousdale, the Scholle representative who signed an allegedly false response to Layko's non-wage garnishment on Scholle's behalf. Layko further argues that the trial court committed reversible error by 1) ruling that it did not have jurisdiction to consider Layko's motion for sanctions against

10

Scholle, 2) granting summary judgment in favor of the defendants on Layko's claim for fraudulent transfer, 3) ruling that the Illinois Fraudulent Transfer Act does not allow an award of attorney fees, and 4) ruling that the attorney fees provision in the lease between Layko and M-OK Distribution was ambiguous and unenforceable. We address each of these issues in turn.

¶ 38                    A. The Trial Court's Denial of Sanctions as to the Professionals

¶ 39        Layko argues that the trial court abused its discretion by denying Layko's requests for sanctions under Illinois Supreme Court Rules 137 and 219 against Okal, Duncan, Marsh, and Giralamo.

¶ 40        Rule 137 states, in pertinent part, that an attorney's signature on a pleading certifies "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact" and "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). Sanctions are awardable under Rule 137 when a party pleads untrue statements of fact which the party knew or reasonably should have known were untrue. See *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 108 (1998). "The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time the pleading was filed." *Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant and Pancake House, Inc.*, 2021 IL App (1st) 192523, ¶ 63.

¶ 41        When relief is sought under Rule 137, the motion must identify not only the improper statement but also the fees and costs that directly resulted from the false statement. *Conner v. First Chicago Holdings*, 2021 IL App (1st) 200199, ¶ 32; see also *Law Offices of Brendan R. Appel, LLC*, 2021 IL App (1st) 192523, ¶ 63. Such specificity enables the trial court to determine "the reasonable expenses incurred as a consequence thereof." *Conner*, 2021 IL App (1st) 200199, ¶ 32.

11

¶ 42　　　The decision to impose sanctions is within the sound discretion of the trial court, and that decision will not be disturbed on review absent an abuse of discretion. *Law Offices of Brendan R. Appel, LLC*, 2021 IL App (1st) 192523, ¶ 74; see also *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 109 (1998). When considering the propriety of an award of sanctions under Rule 137, a reviewing court determines "whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000). A trial court exceeds its discretion regarding the imposition of sanctions under Rule 137 only where no reasonable person would take the view adopted by it. *Law Offices of Brendan R. Appel, LLC*, 2021 IL App (1st) 192523, ¶ 74.

¶ 43　　　A trial court may impose sanctions under Supreme Court Rule 219 against a party who violates Illinois Supreme Court Rules governing the discovery process. Ill. S. Ct. R. 219 (eff. July 1, 2002). For example, Rule 219 sanctions may be warranted when a party provides false or misleading answers during depositions, answers to interrogatories, or requests to admit. Ill. S. Ct. R. 219(b), (c). An appropriate sanction "may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is willful, a monetary penalty." *Id*.

¶ 44　　　In determining what sanction to impose under Rule 219, if any, a trial court must consider (1) the surprise to the adverse party, (2) the prejudicial effect of the proffered testimony or evidence, (3) the nature of the testimony or evidence, (4) the diligence of the adverse party in seeking discovery, (5) the timeliness of the adverse party's objection to the testimony or evidence, and (6) the good faith of the party offering the testimony or evidence. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 124 (1998).

12

¶ 45    A reviewing court may reverse a trial court's imposition of a particular sanction only if the record establishes a clear abuse of discretion. *Id.* at 123. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 53. "Where reasonable people could differ as to the propriety of the trial court's action, there has been no abuse of discretion." *In re Marriage of Vickers*, 2022 IL App (5th) 200164, ¶ 94.

¶ 46    In this case, Layko argues that Okal, Duncan, Marsh, Giralamo and Scholle committed various acts of sanctionable misconduct in an effort to thwart Layko's attempt to collect on the 2014 judgment against M-OK Distribution.

¶ 47    We address Layko's arguments as to each of these defendants in turn.

¶ 48                                1. Okal

¶ 49    As an initial matter, Layko argues that it was deprived of a meaningful hearing on its claims for sanctions against Okal and Duncan because the trial court gave Layko only a single afternoon to address the imposition of sanctions on all five parties, and Layko was "prohibited in the evidentiary hearings from inquiring about" Okal's and Duncan's misconduct.

¶ 50    This mischaracterizes the record. The trial court conducted lengthy hearings addressing the imposition of sanctions against M-OK Distribution, M-OK Freight, Miceli and O'Keefe over a period of three days.  During the hearings, Layko argued that those defendants had made false statements while they were represented by Okal and Duncan, both in discovery and in pleadings that were filed by Okal and Duncan.  Accordingly, the hearings were necessarily focused, in part, on the conduct of Okal and Duncan. Layko was granted a full and fair opportunity to cross-examine both Okal and Duncan regarding their conduct in the case.

13

¶ 51        Moreover, when the trial court later allowed Layko to pursue sanctions against Okal and Duncan directly, Layko decided not to put on any additional evidence regarding their alleged misconduct. When the trial court asked Layko's counsel whether he would be seeking an evidentiary hearing against the attorneys and other professionals, Layko's counsel stated, "[l]et me shorten it. *With respect to Mr. Okal and Mr. Duncan, I'm perfectly satisfied with the testimony they gave under oath already.*" (Emphasis added.) Thereafter, the court took a recess so Layko's counsel could consult with his client and decide whether Layko wanted to proceed to an evidentiary hearing. When he returned to the courtroom, Layko's counsel told the trial court that he only wanted to proceed with an evidentiary hearing with respect to Marsh, Scholle and Giralamo. He expressly stated he did not want to proceed to an evidentiary hearing on his motion seeking sanctions against Okal and Duncan. Accordingly, Layko cannot now be heard to complain that it was somehow forced to accept Okal's and Duncan's prior testimony or that it was forbidden from putting on additional evidence as to them.

¶ 52        In any event, Layko states in its brief that, even without a hearing on Okal and Duncan's misconduct, "Layko provided overwhelming evidence that Mr. Okal and Mr. Duncan engaged in lies and misconduct resulting in Layko's incurrence of hundreds of thousands of dollars in unnecessary fees." Thus, Layko effectively admits that it was not prejudiced by the alleged lack of an opportunity to present additional evidence against Okal and Duncan.

¶ 53        Turning to the merits, Layko argues that Okal engaged in sanctionable conduct under Rules 137 and 219 by falsely stating in pleadings, discovery responses, and sworn testimony that M-OK Distribution did not own trucks or transportation equipment. Layko contends that Okal continued to advance this false claim for more than a year after Layko presented him with "irrefutable evidence" that M-OK Distribution did, in fact, own trucks and other transportation equipment.

14

¶ 54 During Miceli's deposition on July 21, 2020, Layko provided Miceli, Okal and Duncan with a December 31, 2013, QuickBooks balance sheet from M-OK Distribution listing tractors valued at $110,155. During Giralamo's October 6, 2020, deposition, Layko presented M-OK Distribution's tax returns showing that M-OK Distribution had purchased three 2007 Freightliner trucks from "House of Trucks, Inc." in 2012. Four days later, Layko sent Mr. Okal and Mr. Giralamo vehicle sale documents signed by Miceli confirming that M-OK Distribution had purchased trucks in 2012.

¶ 55 Thereafter, on January 8, 2021, Layko filed a motion in limine attaching, *inter alia*: (1) a LexisNexis report of Illinois motor vehicle registrations showing that M-OK Distribution, Inc., was the title holder or registrant for 14 pieces of transportation equipment; (2) documents that appear to be M-OK Distribution's applications for the titles to the three Freightliner trucks that it had purchased in 2012; (3) documents signed by Miceli showing the reassignment of the titles to the three Freightliner trucks to M-OK Distribution; and (4) documentation showing that M-OK had leased eight Stoughton trailers from Wells Fargo Equipment Finance, Inc. On April 9, 2021, Layko filed a sur-brief in support of its fee application that again submitted the three reassignments of title to the three Freightliner trucks.

¶ 56 Despite having received these documents, Okal continued to deny that M-OK Distribution ever owned any trucks. He made these denials in affidavits and pleadings he filed and in statements he made to the court.

¶ 57 On February 10, 2022, Layko's attorney sent Okal and Duncan an email attaching additional documents that Layko intended to use during the upcoming sanctions hearing. Among those documents were the titles to the three trucks at issue identifying M-OK Distribution as the title holder. Four days later, Okal, Duncan, M-OK Freight, Miceli and O'Keefe filed a motion

pursuant to Rule 3.3 of the Illinois Rules of Professional Conduct withdrawing all statements that they had previously made in pleadings, affidavits, argument and testimony denying that M-OK Distribution owned trucks.

¶ 58        Okal argues that the statements he made denying M-OK Distribution's ownership of trucks were based on his honest judgment from the facts presented to him at the time. He maintains that before Layko's counsel e-mailed Okal the actual titles to the three Freightliner trucks in M-OK Distribution's name on February 10, 2022, Okal had good reasons to believe that M-OK Distribution did not own any trucks. He notes that there was a wealth of business records and other documentary evidence showing that M-OK Distribution was merely a broker of freight and had no licensed authority to transport freight.

¶ 59        Okal further notes that, although the invoices from the House of Trucks identified M-OK Distribution as the purchaser of the three Freightliner trucks, M-OK Distribution's business records showed that another entity known as M-OK Transport Services, LLC (M-OK Transport), was the actual purchaser of the trucks because the motor carrier authority number appearing in M-OK Distribution's ST-556 Sales Tax Return was the motor carrier authority held by M-OK Transport. The business records further showed that M-OK Transport, not M-OK Distribution, insured the three trucks and had the sole authority to operate them. Okal further notes that the operation of M-OK Transport was being run through the same bank account and tax returns as M-OK Distribution. He contends that this explains why the two entities would appear on the same QuickBooks records and tax returns.

¶ 60        Rule 137 provides that an attorney has a duty to conduct a reasonable inquiry of the facts and the law before filing an action, pleading, or other paper. Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018). The attorney must objectively review the information submitted by his client. *Chicago Title &*

16

*Trust Co. v. Anderson*, 177 Ill. App. 3d 615, 625 (1988). "If such review reveals important discrepancies, inconsistencies, or gaps in the information provided, the attorney must investigate further before filing the relevant legal paper with the court." *Id.* An attorney cannot simply rely on the client's verbal representations when the client has in his possession additional information bearing on the facts, or when the additional information is readily ascertainable from third parties. *Id.* at 624. An attorney and his client "can[not] blind themselves to what is readily apparent." *Id.*

¶ 61       The failure to conduct a reasonable inquiry may subject an attorney to sanctions. *Amadeo v. Gaynor*, 299 Ill. App. 3d 696, 700 (1998). Sanctions are awardable under Rule 137 when a party pleads untrue statements of fact which the party knew or reasonably should have known were untrue. See *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 108 (1998).

¶ 62       "The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time the pleading was filed." *Law Offices of Brendan R. Appel. LLC*, 2021 IL App (1st) 192523, ¶ 63. Whether a particular inquiry was "reasonable" must be determined by an objective standard based upon the circumstances existing at the time the pleading or other legal paper was presented to the court. *Chicago Title & Trust Co.*, 177 Ill. App. 3d at 623.

¶ 63       As of January 8, 2021, Okal had in his possession invoices showing that M-OK Distribution had purchased three Freightliner trucks in 2012, and documents showing the seller's reassignment of the titles to those trucks to M-OK Distribution. This was sufficient to trigger Okal's duty to investigate the matter further, even if some of the documentary evidence arguably suggested that M-OK Distribution did not own trucks. Okal's argument that he had no good reason to believe that M-OK Distribution owned any trucks until he received the actual titles to the three trucks in M-OK Distribution's name strains credulity.

¶ 64    Nevertheless, we cannot say that the trial court abused its discretion by declining to sanction Okal on this basis. The evidence cited by Okal provided at least some support for Okal's mistaken belief that the three trucks at issue were owned by M-OK Transport rather than M-OK Distribution.

¶ 65    Moreover, the trial court had already imposed sanctions against M-OK Distribution and its principals for lying about M-OK Distribution's ownership of trucks and awarded Layko the entire amount of fees and costs it had incurred as a result of those lies. Although a trial court may impose sanctions against an attorney for egregious violations of Rule 137 even though the opposing party has been fully compensated for the harm caused by the violation, the trial court could have reasonably concluded that Okal's misconduct was not egregious enough to warrant such a sanction.

¶ 66    Layko further argues that Okal committed sanctionable violations of Rule 219 by making "excessive and frivolous objections and interruptions" during Miceli's discovery deposition and evidence deposition. However, Layko provides no examples of any such objections or interruptions and no explanation as to why any of them were excessive or frivolous. Nor has Layko identified any instance wherein Okal failed to comply with any discovery requests, pretrial procedure or any pretrial order entered by the trial court. Accordingly, the trial court's denial of sanctions against Okal was not an abuse of discretion.

¶ 67                                2. Duncan

¶ 68    Layko contends that Duncan committed various discovery abuses, including providing false and deceptive responses to discovery requests, serving vexatious discovery requests and excessive motions to dismiss, and refusing to produce Miceli for a deposition for six months after Layko had moved to compel his deposition. Layko claims that this misconduct delayed the

proceedings and caused it to incur additional attorney fees. Layko argues that the trial court abused its discretion in denying Layko's motion for sanctions against Duncan.

¶ 69    Layko's argument is not persuasive. The trial court could have reasonably found that the two false statements Layko identified in Duncan's interrogatory responses were made in good faith and based on the evidence provided by his client at the time. Moreover, Layko has not explained why the discovery requests served by Duncan were vexatious or unwarranted, or why any of the motions to dismiss that Duncan filed lacked a good-faith basis in law or fact. Nor has Layko established that it was substantially prejudiced by a six-month delay in deposing Miceli, particularly considering that the delay was at least partially caused by the Covid-19 pandemic. Accordingly, the trial court did not abuse its discretion in denying Layko's motion for sanctions against Duncan.

¶ 70                                          3. Giralamo

¶ 71    Layko also moved for sanctions against Giralamo, M-OK Distribution's outside accountant and tax preparer, pursuant to Illinois Supreme Court Rules 137 and 219(c). However, Rule 137 applies only to parties and their attorneys, not to nonparties like Giralamo. *In re C.K.*, 214 Ill. App. 3d at 300 (finding "no basis for the application of Rule 137" for subpoena signed by nonparty). *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 34 (concluding that, because entity was a nonparty, "Rule 137 sanctions were not a proper remedy."). Each of the cases cited by Layko involves Rule 137 sanctions against parties or their attorneys who signed false papers. Accordingly, Layko's motion for sanctions under Rule 137 fails as a matter of law.

¶ 72    Rule 219(c) may be applied to a nonparty who commits discovery abuses, but only when the nonparty's allegedly sanctionable conduct was performed "at the instance of or in collusion with a party." Ill. S. Ct. R. 219(c). Layko provides no evidence that M-OK Distribution ordered

19

Giralamo to commit any alleged discovery abuses or that Giralamo acted in collusion with M-OK Distribution in committing any such abuses.

¶ 73    Layko argues that Giralamo "colluded with" M-OK Distribution by changing his testimony about M-OK Distribution's ownership of trucks during his deposition after he was "corrected" by Okal, who represented M-OK Distribution. However, Giralamo testified that, when Layko's counsel asked him whether M-OK Distribution owned trucks, he responded "yes" because he was confused about which "M-OK" entity was at issue. When he later understood which M-OK entity was at issue, he corrected his testimony. Nothing in the deposition transcript suggests that Okal coached Giralamo to change his testimony or otherwise colluded with him in any way.

¶ 74    Accordingly, the trial court correctly denied Layko's motion for sanctions against Giralamo.

¶ 75                                    4. Marsh

¶ 76    Layko argues that the trial court abused its discretion in denying its motion for sanctions against Marsh, who represented Scholle. Layko maintains that Marsh committed sanctionable misconduct under Rules 137 and 219(c) in various respects.  For example, Layko claims that Scholle did not produce an "appropriate" corporate representative for deposition.  Illinois Supreme Court Rule 206 allows a corporation to designate a representative to testify on its behalf during a deposition. Ill. S. Ct. R. 206 (eff. Oct. 1, 2021).  Scholle designated Xandrea Rapier and James Rocks.  Layko argues that these witnesses did not satisfy the requirements of Rule 206. It notes that Rapier admitted during her deposition that she did not know who O'Keefe was and did not have personal knowledge of some of the topics that Layko had previously informed Scholle it would raise during the deposition.  Layko further notes that neither Rapier nor Rocks ever spoke

20

to Trousdale, and that Marsh prevented Rapier and Rocks from testifying about how they prepared for their depositions.

¶ 77　　Contrary to Layko's argument, Rule 206 does not require a designated corporate representative to have personal knowledge of the relevant matters. Rather, it allows an organization to designate a representative deponent who "shall testify as to matters known *or reasonably available to the organization*." (Emphasis added.) Ill. S. Ct. R. 206(a)(1) (eff. Oct. 1, 2021). Although Layko identifies a few isolated instances when Rapier arguably seemed unprepared to answer a relevant question, Layko has not established that Rapier was not a proper representative witness under Rule 206.

¶ 78　　Layko further argues that Marsh disrupted the depositions of Rapier and Rocks by making numerous inappropriate objections. However, Layko identifies only one example of an allegedly inappropriate objection. Layko does not explain why any of the other objections made by Marsh were baseless or made in bad faith.  The trial court reviewed the deposition transcripts and found that, although Marsh was "snarky" at times, most of her conduct during the depositions was consistent with zealous advocacy and was not inappropriate. We cannot conclude that the trial court abused its discretion in declining to sanction Marsh.

¶ 79　　Layko further argues that the trial court abused its discretion by excluding the federal District Court of Colorado's decision in *ORP Surgical, LLP v, Howmedica Osteonics Corp.*, 647 F. Supp. 3d 1068 (D. Colo. 2022), in which the court found that Marsh had behaved inappropriately, disruptively and unprofessionally. The admission of evidence is a matter largely within the discretion of the trial court, and its decision will not be reversed unless there has been an abuse of discretion. *Green v. Union Pacific Railroad Co.*, 269 Ill. App. 3d 1075, 1082 (1995). Layko cites *In re Guilford*, 115 Ill. 2d 495 (1987), for the proposition that "[p]rior disciplinary

21

action against an attorney is properly considered in determining the extent and nature of discipline for subsequent misconduct." *Id.* at 502. *Guilford* involved a disciplinary proceeding against an attorney, not a motion for sanctions against an attorney in a civil case. In any event, *Guilford* merely notes that prior disciplinary action against an attorney *may* be considered, not that it *must* be considered. Layko cites no authority in support of the latter proposition, nor have we found any. The issue in this case was whether Marsh committed sanctionable conduct in *this* case. Evidence of her prior misconduct in other cases had little probative value. Thus, the trial court's decision to disregard the *ORP Surgical, LLP* case was not unreasonable.

¶ 80    The trial court did not abuse its discretion in denying Layko's motion for sanctions against Marsh. We have considered Layko's other arguments on this issue and find them to be without merit.

¶ 81                    B.  Layko's Motion for Sanctions Against Scholle.

¶ 82    Layko also sought sanctions against Scholle under Supreme Court Rules 137 and 219, arguing that Scholle provided false responses to a non-wage garnishment issued by Layko in the 2014 case.  The resolution of these issues requires us to interpret Supreme Court Rules 137 and 219, which is a question of law that we review *de novo*. *People v. Santiago*, 236 Ill. 2d 417, 428 (2010).

¶ 83    The trial court found that it lacked jurisdiction to consider Layko's motion for sanctions under Rule 137 because 1) the motion was filed more than 30 days after the 2014 case had been dismissed, and was therefore untimely, and 2) Scholle was not a party to the litigation.

¶ 84    Motions brought pursuant to Illinois Supreme Court Rule 137 "must be filed within 30 days of the entry of final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion." Ill. Sup. Ct. R. 137(b) (eff. Jan. 1, 2018); see also

22

*Lakeshore Ctr. Holdings, LLC v. LHC Loan, LLC,* 2019 IL App (1st) 180576, ¶ 20 ("[A] litigant has 30 days from the entry of th[e] final judgment to assert a Rule 137 claim.").

¶ 85    On February 18, 2022, the trial court entered a "Full Satisfaction of Release of Judgment" after M-OK Freight tendered the full amount due under the April 2014 judgment against M-OK Distribution. The court's order provided that the April 2014 judgment was "vacated and held for naught" based on the payment of the judgment and that the matter was "hereby dismissed." Layko sought reconsideration of the court's dismissal order, which the trial court denied on April 18, 2022. On May 17, 2022, Layko filed a notice of appeal, in which it stated, "Layko's post-judgment Motion to Reconsider was the final post-judgment motion in proceeding No. 2014 L 80, and no other claims or issues remain outstanding in that proceeding."

¶ 86    Layko's motion for sanctions was predicated on Scholle's August 2014 responses to the garnishment interrogatories, which were issued in the 2014 action. However, Layko did not file its motion for sanctions against Scholle until October 4, 2022, more than six months after the trial court's dismissal of the 2014 case became final, and more than four months after Layko filed its notice of appeal. Because Layko's motion was filed more than 30 days after the dismissal of the 2014 case, it was untimely under Rule 137, and the trial court lacked jurisdiction to consider Layko's motion under that rule. Ill. S. Ct. R. 137(b); see also *Rehabilitation Consultants for Industry, Inc. v. Nowak*, 259 Ill. App. 3d 725, 729 (1994).

¶ 87    Layko argues that its motion for sanctions was timely filed notwithstanding the dismissal of the 2014 case because some of the sanctionable conduct at issue occurred in the 2018 case, which remained pending at the time Layko filed its motion for sanctions on October 4, 2022. Layko further maintains that its motion for turnover against Scholle, which remained pending at the time the trial court stayed the proceedings, included a request for sanctions. Layko maintains

23

that this operated as a postjudgment motion that tolled the time for Layko to file its motion for sanctions under Rule 137. Layko argues that, because it filed its motion for sanctions less than 30 days after the stay was lifted, its motion was timely under Rule 137.

¶ 88        We disagree. Layko's motion for sanctions under Rules 137 and 219 was addressed solely to Scholle's allegedly false responses to the garnishments, which occurred in the 2014 case. The motion does not reference alleged discovery abuses or other misconduct committed by Scholle in the 2018 case.

¶ 89        Moreover, Layko's motion for turnover did not seek sanctions against Scholle under Rule 137 or Rule 219. It merely cited section 12-715 of the Code of Civil Procedure, the statute governing awards for sanctions in turnover proceedings. 735 ILCS 5/12-715 (West 2022). Further, in its notice of appeal, Layko stated that its motion to reconsider the trial court's dismissal of the 2014 case was "the final post-judgment motion" in that case and that "no other claims or issues remain outstanding in that proceeding." Thus, contrary to Layko's argument, there was no pending motion for Rule 137 or 219 sanctions in the turnover proceeding, and even if there were, Layko waived the right to litigate any such motion in its notice of appeal.

¶ 90        In any event, Rule 137 applies only to *parties and their attorneys*, not to nonparties. *In re C.K.*, 214 Ill. App. 3d at 297, 300 (1991). Layko argues that Scholle became a party when it signed a garnishment response (which Layko claims is a "paper" filed in the court within the meaning of Rule 137) and when Marsh appeared and argued on Scholle's behalf. We disagree. If Layko's argument were correct, anyone who responds to a subpoena or appears for a deposition would be rendered a "party" to the case. That is not the law.

¶ 91        Layko's motion for sanctions under Rule 219 fares no better. Rule 219(c) sanctions are applicable only to alleged noncompliance with Supreme Court Rules 201-224, which address

24

discovery tools used in ordinary civil litigation such as interrogatories (Rule 213), production requests (Rule 214), and requests for admission (Rule 216), among others. As noted above, Layko's motion for sanctions under Rule 219 was premised entirely on Scholle's allegedly false responses to a garnishment. Interrogatories served to a nonparty garnishee are not governed by Rules 201 to 224, but are instead set forth in section 735 ILCS 5/12-705(a) of the Code, which governs garnishment proceedings. Accordingly, the trial court correctly declined to consider Layko's Rule 219 motion.

¶ 92                              C.  Layko's Request to Depose Trousdale

¶ 93        The court also properly denied Layko's request to depose Trousdale. Layko sought to depose Trousdale because he signed the allegedly false garnishment response. However, at the time Layko requested to depose Trousdale, the 2014 case had been dismissed, and any issues related to the garnishment served in that case were no longer pending and could no longer be raised. Layko admitted as much in its notice of appeal of the trial court's judgment in that case. Further, Layko knew for years that Trousdale had signed the garnishment response, but it did not seek to depose him until months after the case had been dismissed.

¶ 94                              D.  Fraudulent Transfer

¶ 95        Layko argues that the trial court erred by granting summary judgment to the defendants on Layko's claim for attorney fees under the Act.  Summary judgment is appropriate where the pleadings, depositions, admissions on file and affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). In considering a summary judgment motion, the court draws all reasonable inferences liberally in favor of the non-moving party and strictly against the movant. *Weedon v. Pfizer, Inc.*, 332 Ill. App. 3d 17, 20 (2002).  Where reasonable persons could draw divergent inferences from

25

the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Wausau Insurance Co. v. All Chicagoland Moving & Storage Co.*, 333 Ill. App. 3d 1116, 1120 (2002). We review a trial court's grant of summary judgment *de novo. Quality Transportation Services, Inc. v. Mark Thompson Trucking, Inc.*, 2017 IL App (3d) 160761, ¶ 24. Interpreting a statutory right to fees is also a question of law which we review *de novo. McCarthy v. Taylor*, 2109 IL 123622, ¶ 17; *Dayan v. McDonald's Corp.*, 126 Ill. App. 3d 11, 23 (1984).

¶ 96 Layko argues that M-OK Distribution violated the Act by fraudulently transferring assets to M-OK Freight (which Layko characterizes as a shell corporation that was merely a name change for M-OK Distribution) in order to avoid paying the 2014 judgment. The trial court granted summary judgment for the defendants after the 2014 judgment had been fully paid to Layko, with statutory interest. The trial court ruled that the full payment of the original judgment and post-judgment interest mooted any claims under the Act. Layko disagrees, arguing that it is entitled to obtain attorney fees under the Act.

¶ 97 The Act authorizes a judgment creditor to obtain the amount *necessary to satisfy the judgment*. 740 ILCS 160/8(a)(1) (West 2022) (a creditor may obtain "avoidance of the transfer *** to the extent necessary to satisfy the creditor's claim"*) (emphasis added); 740 ILCS 160/9(b) (West 2022) ("the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), *or the amount necessary to satisfy the creditor's claim*, whichever is less."). (Emphasis added). The Act says nothing about attorney fees.

¶ 98 Under the "American Rule," each party must pay its own attorney fees unless a contractual or statutory provision clearly provides otherwise. *Uncle Tom's, Inc. v. Lynn Plaza, LLC*, 2021 IL App (1st) 200205, ¶ 72. "Statutes allowing for recovery of attorney fees must be strictly construed

26

as they are in derogation of the common law." *Boryslavska v. Paul*, 2020 IL App (1st) 190326-U, ¶ 19. Thus, because the Act is silent on attorney fees, and its plain terms imply that fees are not available, we may not interpret the Act as allowing for attorney fees. *Bank of America v. W.S. Management, Inc.*, 2015 IL App (1st) 132551, ¶ 121 (ruling that "the current version of the Fraudulent Transfer Act does not specify that attorney fees are recoverable and Illinois courts generally refuse to allow recovery for attorney fees unless the statute specifically states that 'attorney fees' are recoverable"); *see also Bremel v. Quedas, Inc.*, 2024 IL App (1st) 231209, ¶ 32 ("To the extent that plaintiff's argument may be interpreted as a standalone request for attorney fees, as opposed to a request for punitive damages, we wholly agree with the *WS Management* court that such an award is not available under the [Act].").

¶ 99        Layko cites *Centerpoint Energy Services v. Halim*, 743 F.3d 503, 508 (7th Cir. 2014) and *Steiner Electric Co. v. Maniscalco*, 2016 IL App (1st) 132023 for the proposition that "a party that establishes a fraudulent transfer *** is entitled to attorneys' fees and costs." Although the courts in those cases awarded attorney fees, they did so because the parties' contracts provided for the award of attorney fees. They did not address whether attorney fees are available under the Act.

¶ 100       Layko cites section 8(a)(3)(c) of the Act, which provides that, "[i]n an action for relief against a transfer or obligations under this Act, a creditor *** may obtain, *** subject to applicable principles of equity and in accordance with applicable rules of civil procedure, *** any other relief the circumstances may require." 740 ILCS 160/8(a)(3)(C) (West 2022). Layko argues that this provision authorizes an award of attorney fees. This argument was rejected in *WS Management*, and we reject it here. Layko cites a handful of cases from other jurisdictions awarding attorney fees under their versions of the Act. However, Layko cites no Illinois cases holding that the Act provides for attorney fees. "[D]ecisions of the reviewing courts of foreign jurisdictions are not

27

binding on Illinois courts." *WS Management*, 2015 IL App (1st) 132551, ¶ 121. Accordingly, the trial court properly granted summary judgment to the defendants on this issue.

¶ 101                               E.  Attorney Fees Under the Parties' Lease

¶ 102        Layko argues that the trial court erred by holding that the attorney fee provision in the parties' lease agreement was ambiguous and did not clearly authorize the award of attorney fees to Layko for costs it incurred in enforcing the 2014 judgment. We review a lower court's interpretation of a lease's terms *de novo*. *Department of Transportation v. 600 West Dundee, LLC*, 2019 IL App (1st) 181699, ¶ 7.

¶ 103        Section 1601 of the parties' lease provides:

> "Lessee further agrees to pay all costs and expenses, including reasonable attorney's fees, which may be incurred by or imposed on Lessor in enforcing this Lease or in any litigation to which Lessor may be made a party and if paid by lessor, shall be so much additional rent due on the next rent date after such payment together with interest at twelve percent (12%) per annum, compounded monthly, from the date of payment."

¶ 104        On May 25, 2021, the trial court held that section 1601 was not ambiguous and that it applied to Layko's postjudgment efforts to enforce the 2014 judgment. On April 18, 2022, the trial court changed its mind and ruled that section 1601 was ambiguous. It held that, by its terms, section 1601 was not applicable because it applied only to costs and expenses incurred by lessor in enforcing the lease, and the instant case brought by Layko was to enforce the *2014 judgment*, not the lease. The court further held that the remainder of section 1601 was "wildly ambiguous" and therefore unenforceable.

¶ 105    We interpreted section 1601 in a prior appeal brought by Layko (*Layko Properties v. M-OK Distribution, Inc.*, 2023 IL App (3d) 220203-U, Appeal No. 3-22-0203). Layko had appealed the full satisfaction and release of judgment that the trial court entered in the 2014 case following M-OK Freight's payment of the judgment amount plus statutory interest. Layko argued on appeal that, because it was entitled to postjudgment interest, attorney fees, expenses and costs under the lease, the payment of the judgment plus statutory postjudgment interest was insufficient to satisfy the judgment. We rejected Layko's argument and affirmed the trial court's order entering full satisfaction and release of judgment. *Id.* at ¶¶ 22-24.

¶ 106    In so doing, we held that section 1601 could not be read as authorizing an award of attorney fees incurred postjudgment in an attempt to collect on the judgment. *Id.* We noted that, under the American Rule, "contract provisions allowing for the recovery of attorney fees must be strictly construed." *Id.* at ¶ 21. Construing section 1601 strictly and giving its terms their plain meaning, we concluded that section 1601 "only entitled Layko to recover attorney fees, costs and expenses incurred in *enforcing the lease*, not in collecting on the judgment." *Id.* at ¶ 22. (Emphasis added.) We noted that, once the judgment was final, Layko was no longer enforcing the lease but instead was seeking to collect on its judgment. *Id.* We found that the cases upon which Layko relied were distinguishable because the contractual language in each of those cases expressly allowed for attorney fees incurred in collecting amounts owed. *Id.*

¶ 107    We further found that section 1601's statement that Layko could recover attorney fees, costs and expenses incurred "in any litigation to which [it] may be made a party" undermined Layko's interpretation of section 1601. *Id.* at ¶ 23. Layko had argued that it was "made a party" to the underlying litigation because of the defendants' actions. However, we noted that a plain reading of the language "may be made a party *** indicates, due to its passive tone, that it

29

contemplates that someone else made Layko a party, or, in other words, brought Layko into the litigation as a party, rather than Layko itself initiating the litigation." *Id.* Therefore, because Layko itself initiated the litigation, we found its attempts to recover its attorney fees, costs, and expenses under that provision to be unavailing. *Id.*

¶ 108    We reach the same conclusion in this case. Construing section 1601 strictly, as the American Rule requires, we conclude that section 1601 cannot be read as authorizing attorney fees under the circumstances presented in this case, which involve Layko's postjudgment efforts to collect on the 2014 judgment.

¶ 109    As noted, the trial court came to the same conclusion. However, it rejected Layko's claim for attorney fees under section 1601 partly because it found section 1601 to be ambiguous. This court is not bound by the trial court's reasoning and may affirm on any basis supported by the record, regardless of whether the trial court made its decision on that basis. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11; see also *Kubicheck v. Traina*, 2013 IL App (3d) 110157, ¶ 28 n.3 ("we review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports"); *People v. Reed*, 361 Ill. App. 3d 995, 1000 (2005). Accordingly, although we find section 1601 to be unambiguous, we uphold the trial court's judgment.

¶ 110                    F.  Defendants' Motions for Sanctions against Layko

¶ 111    Marsh, Scholle and Giralamo ask us to impose sanctions against Layko and its counsel under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994) and costs under Supreme Court Rule 374 (eff. July 1, 2017) for filing an appeal that is frivolous and made in bad faith. Although some of Layko's arguments on appeal are weak, we do not find any of them to be so frivolous as to

30

justify awards of sanctions and costs. We do not believe that Layko brought its appeal in bad faith. We therefore deny the defendants' motions.

¶ 112                                III. CONCLUSION

¶ 113      We have considered all the remaining arguments Layko made as to each issue it raised and found them to be meritless. For the reasons set forth above, we affirm the judgment of the circuit court of DuPage County in all respects.

¶ 114      Affirmed.